**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **PARK CAPITAL A C Q L L C ET AL** | **CASE NO. 2:26-CV-02385** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHOICE HOTELS INTERNATIONAL INC ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 7] filed by defendant Choice Hotels International, Inc., asserting that all claims in this matter are subject to a binding arbitration agreement and should be dismissed pending the outcome of ongoing arbitration proceedings. Plaintiffs oppose the motion. Doc. 14.

## I.
## BACKGROUND

This suit arises from a Quality Suites Franchise Agreement executed by plaintiff Park Capital ACQ, LLC ("Park Capital") and defendant Choice Hotels International, Inc. ("Choice Hotels") in December 2021 for operation of a Quality Inn & Suites at 401 Lakeshore Drive in Lake Charles, Louisiana. Doc. 13, att. 1. The Franchise Agreement contains the following clause:

> **21. Arbitration. Except for our claims against you for indemnification or actions seeking to enjoin you from using any of our Intellectual Property (including the Brand Mark) or the Choice-Related Words in violation of this Agreement or any other agreements (including the ChoiceAdvantage Software Terms of Use), any controversy or claim arising out of or relating to this Agreement or any other related agreements, or the breach of this Agreement or any other related**

> **agreements, including any claim that this Agreement or any part of this Agreement or any related agreements is invalid, illegal, or otherwise voidable or void, as well as any claim that we violated any laws in connection with the execution or enforcement of this Agreement or any related agreements and any claim for declaratory relief, will be sent to final and binding arbitration in the state of Maryland before either the American Arbitration Association, J.A.M.S., or National Arbitration Forum in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . . The arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision, except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchise Registration and Disclosure Law. Judgment on the arbitration award may be entered in any court having jurisdiction. If any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against the party, notwithstanding its failure to appear. Any arbitration will be conducted at our headquarters in Maryland and the parties agree that any state laws attempting to prohibit arbitration in Maryland are pre-empted by the Federal Arbitration Act. Nothing in this Section 21 will be construed as requiring you or us to make a claim in arbitration before exercising any rights you or we may have to give notice of default or termination in accordance with the terms of this Agreement or any related agreements.**

*Id.* at 22–23.

Plaintiffs allege that the Franchise Agreement failed to deliver the commercial value represented during the sales process, and that they exercised their right of termination in June 2022, effective January 2023. Doc. 1, ¶¶ 11–12. In November 2022 plaintiffs executed an addendum to the Franchise Agreement and entered into a Membership Agreement with Choice Hotels for the Ascend Hotel Collection. Doc. 1, ¶ 14. This agreement contains the same arbitration provision as the Franchise Agreement. Doc. 13, att. 1, pp. 18–19. Plaintiff Abraham Bodek, who signed the Franchise Agreement and Membership Agreement in his capacity as manager of Park Capital, also executed two guaranties in connection with the Franchise Agreement. *See* doc. 13, atts. 2 & 3. The guaranties contain similar arbitration

provisions, stating that "any controversy or claim founded upon or arising out of or relating to this Guaranty, the Membership Agreement, or any related Agreement, or to the breach [thereof], will be sent to final and binding arbitration . . . ." Doc. 13, att. 2, p. 3; doc. 13, att. 3, p. 3.

Plaintiffs allege that Choice Hotels was required to deliver a complete Franchise Disclosure Document ("FDD") specific to the Ascend Hotel Collection brand at least fourteen days before plaintiffs signed the Membership Agreement or made payment in connection with the Ascend Hotel Collection Franchise, and failed to do so. Doc. 1, ¶ 16. They further allege that Choice Hotels personnel relied on market performance representations that "were not grounded in actual market conditions" and pressured plaintiffs to rapidly finalize transactions and execute documents in association with the Ascend Membership Agreement. *Id.* at ¶¶ 18–19. Plaintiffs complain that, under the Ascend franchise relationship, Choice Hotels required significant investment from plaintiffs for property improvements without providing "a defined, stable, and enforceable scope of work[.]" *Id.* at 23–24. They further maintain that they expended $40,000 in affiliation fees and approximately $1,000,000 in property improvements under this relationship "for brand access and franchise support that were never delivered" because the hotel never opened. *Id.* at ¶ 25.

In February 2026 Choice Hotels filed a Demand for Arbitration against plaintiffs, seeking $453,562.34 in unpaid fees and liquidated damages under the agreements, plus attorney fees and costs. *Id.* at ¶ 26. Arbitration was stayed while the parties attempted to negotiate a settlement. *Id.* In July 2026 plaintiffs filed suit in this court against Choice

Hotels and Choice Hotels employees Pete Metzger and Harry Burdette. They invoke the court's diversity jurisdiction under 28 U.S.C. § 1332 and raise claims of (1) declaratory judgment, seeking a declaration that the Membership Agreement is void, the arbitration clause is unenforceable, and the separability doctrine is inapplicable here; (2) violation of Federal Trade Commission ("FTC") Franchise Rule, 16 C.F.R. § 436.2(a); (3) fraudulent inducement; (4) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. § 51:1401 *et seq.*; (5) rescission and restitution; (6) unjust enrichment; (7) breach of implied covenant of good faith and fair dealing; and (8) declaration that a general release in the Franchise Agreement addendum is void and an emergency stay of arbitration proceedings. Doc. 1, pp. 11–23.

Choice Hotels now brings this Motion to Dismiss, asserting that the arbitration agreements are enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and that plaintiffs cannot avoid arbitration by asserting a fraud claim. Doc. 7. Plaintiffs oppose the motion. Doc. 14. They argue that formation issues exist with the agreements and that the court should conduct a limited proceeding under § 4 of the FAA. They also contend that their claims against Metzger and Burdette do not fall within the scope of the arbitration agreements. Alternatively, they assert that the court lacks discretion to dismiss the case under *Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024), and should instead stay it pending conclusion of arbitration.

## II.
## Law & Application

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written arbitration agreements in "any maritime transaction or a contract evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts conduct a two-step inquiry when resolving a motion to compel arbitration under the FAA. First, the court decides whether the parties agreed to arbitrate their dispute—that is, whether (1) there is a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001). It then looks to whether legal constraints external to the agreement foreclose arbitration. *Id.*

The court applies state law when determining whether a valid arbitration agreement exists, unless the state law is preempted by federal law. *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 740 (5th Cir. 2026). Choice Hotels maintains that Maryland law applies, based on the choice of law provisions in all four contracts. Plaintiffs maintain that the court must apply Louisiana law because the choice of law provisions "[have] force only if the parties validly formed a contract." *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 530 n. 11 (5th Cir. 2020) (quoting *Edminster, Hinshaw, Russ and Assoc., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020)).

In a diversity case, the "choice of substantive law is governed by the forum state's choice of law rules." *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991). Louisiana follows a two-step procedure, first determining whether there is a true conflict

among the relevant state laws. *In re Combustion, Inc.*, 960 F.Supp. 1056, 1067 (W.D. La. 1997). If there is no conflict, the court applies the law of the forum state. *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990). The relevant issue here is contract formation. Choice Hotels concedes that the question of whether Louisiana law governs is "merely academic" and that it also prevails under Louisiana law in its argument that plaintiffs manifested consent to the relevant agreements. Accordingly, the court will apply Louisiana law to the issue of contract formation.

Under Louisiana law, a contract is formed by the consent of the parties as established through the offer and acceptance. La. Civ. Code art. 1927. The offer and acceptance may be made orally, in writing, or by action or inaction "clearly indicative of consent." *Id.* Consent may also be vitiated through error, fraud, or duress. La. Civ. Code art. 1948.

Plaintiffs argue that their formation challenge should be evaluated against the Ascend transaction alone, rather than in the context of the prior relationship between plaintiffs and Choice Hotels under the Quality Suites franchise. They also admit that their allegations of economic pressure, fraudulent inducement, FTC Franchise Rule violation, and FDD non-delivery go to the validity of the contract rather than its formation. Under the Supreme Court's separability doctrine, allegations of error or fraud can only prevent arbitration if they relate to the arbitration agreement specifically rather than to the contract containing that agreement generally. *Buckeye Check Cashing, Inc. v. Cardagena*, 546 U.S. 440, 445 (2006). "Thus, a party's challenge to another provision of the contract, or to the

contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Plaintiffs contend that their position is narrower, and that they merely wish for the court "to resolve any properly presented antecedent formation issue before giving effect" to the delegation clauses within the arbitration agreements. Doc. 14, p. 6. Plaintiffs acknowledge that they electronically executed the Ascend Membership Agreement. Doc. 14, p. 12; *see* doc. 13, att. 1, p. 5. Plaintiffs maintain that the court should find that they did not consent to same because any performance manifesting consent was done in service of the Franchise Agreement. But they provide no basis to vitiate the consent indicated by their signature on the written document, which contained the arbitration agreement, or on the guaranties and Franchise Agreement, all of which also contained arbitration agreements. Both Louisiana and Maryland law have long given effect to electronic signatures on contracts. *See, e.g.*, *Delta Fuel Co., Inc. v. Abbott*, 2019 WL 3810047, at *4 (W.D. La. June 14, 2019) (citing La. R.S. § 9:2607); *Grant-Fletcher v. Collecto, Inc.*, 2014 WL 1877410 (D. Md. May 9, 2014). Additionally, the federal Electronic Signatures in Global and National Commerce Act establishes a general rule of validity for electronic signatures in transactions in or affecting interstate commerce. *Delta Fuel Co., Inc.*, 2019 WL 3810047 at *4 n. 3 (citing 15 U.S.C. § 7001). Accordingly, plaintiffs fail to present any legitimate argument against formation.

Upon review, and noting the lack of opposition from plaintiff on this issue, the court determines that their claims against Choice Hotels all fall within the broad scope of the arbitration agreements. Plaintiffs likewise fail to identify any external legal constraints

foreclosing arbitration. Thus, the only issues left for the court to decide are whether (1) plaintiffs' claims against Metzger and Burdette also fall within the scope of this agreement and (2) whether the appropriate remedy is dismissal or a stay.

On the first issue, the complaint raises allegations against Metzger and Burdette in their capacity as sales representatives of Choice Hotels. These are isolated to a fraudulent inducement claim in which Metzger and Burdette's representations and knowledge are imputed to their employer. Doc. 1, ¶¶ 47–52. The complaint also seeks judgment against Choice Hotels alone. *Id.* at p. 23. A fraudulent inducement claim falls within the scope of the arbitration agreements in the Franchise Agreement and Membership Agreement, which extend to claims that Choice Hotels "violated any laws in connection with the execution" of the respective contracts. *See* Doc. 13, p. 23; doc. 13, att. 1, p. 18. "Case law overwhelmingly holds than an employee is protected by an arbitration agreement signed by his or her employer" because "[a] rule to the contrary would allow plaintiffs to circumvent arbitration agreements merely by naming the employee as an individual defendant instead of the employer itself, which would in turn thwart the strong federal policy in favor of arbitration." *Gupta v. Lynch*, 2014 WL 4063831, at *7 (E.D. La. Aug. 15, 2014) (internal quotations omitted). To the extent plaintiffs have raised claims against Metzger and Burdette, these are also subject to arbitration.

Finally, the Supreme Court has recently held: "When a district court finds that a lawsuit is involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Plaintiffs expressly request such a stay in lieu of dismissal. Doc. 14, p. 21.

Choice Hotels maintains that only the party who has requested arbitration is entitled to ask for a stay, noting that § 3 of the FAA directs the court to stay the case "on application of one of the parties" but only "providing the applicant for the stay is not in default in proceeding with such arbitration." Doc. 15, p. 6. Parties are in default under § 3 when the party requesting the stay has acted in a way that is inconsistent with arbitration. *E.g.*, *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985). Accordingly, despite *Spizzirri*'s broad language, the Sixth Circuit recently affirmed that it did not extend a right to stay proceedings to the party opposing arbitration. *Tucker v. United Wholesale Mortg., Inc.*, 2024 WL 5629335, at *4 n. 2 (E.D. Mich. July 10, 2024), *aff'd*, 2025 WL 1082316 (6th Cir. Apr. 10, 2025). The lower court observed that dismissal was appropriate because its only role after finding that all claims were arbitrable would be to enforce an arbitration award. 2024 WL 5629335 at *4 n. 2. So too here. Plaintiffs have brought this suit for the purpose of opposing ongoing arbitration proceedings, and the court has determined that all of their claims must be decided under those proceedings. Accordingly, there is no basis to maintain the case on the court's docket.

## III.
## CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 7] will be **GRANTED** and all claims in this matter will be **DISMISSED** and compelled to arbitration.

**THUS DONE AND SIGNED** in Chambers on the 5th day of October, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**